## ALPHONSO PATTEN vs. CITY OF BANGOR.

*Bounty—construction of resolve to pay.  Mustering officers—authority of.*

Where a resolve of a city government provided, "That for the purpose of pro-
moting enlistments to fill the city's quota, under" a specified call of the presi-
dent, a certain bounty should "be paid to each man who has volunteered, or
shall volunteer,". . . "the mayor to draw his order on the city treasurer"
therefor, "on receiving satisfactory evidence that such man has volunteered,
and been accepted and mustered into the military service as a part of said
quota," proof that the person claiming the bounty was duly accepted and
credited upon that quota by the proper authority is essential to a recovery.

The memorandum, "credited 4th district, Penobscot county, 3d ward, Bangor
city, Me.," made upon the "muster and descriptive roll of the detachment,"
to which he belonged, by the mustering officer in Florida, where the volunteer
reënlisted, did not fix the volunteer upon that quota.

ON REPORT.

ACTION to recover a bounty provided in the following resolve,
passed by the municipal government of the city of Bangor, Feb.
7, 1865:

That for the purpose of promoting enlistments to fill this city's
quota under the call of the president of the United States, of Dec.
19, 1864, for three hundred thousand men for the military and
naval service of the United States, the following sums be paid to
each man who has volunteered, or who shall volunteer, or to each
enrolled man who has procured, or shall procure a substitute for
himself, namely: To each person (except such as have enlisted in,
or been assigned to the "Coast Guard"), who volunteers or pro-
cures a substitute for the period of one year, three hundred dollars;
for the period of two years three hundred and fifty dollars; for the
period of three years four hundred dollars.

The mayor to draw his order on the city treasurer for said sums
respectively, on receiving satisfactory evidence that such man has
volunteered, or such enrolled man has procured a substitute as
aforesaid, and that such volunteer or substitute has been accepted

and mustered into the military or naval service of the United States, as a part of said quota.

The plaintiff put in his original "muster and descriptive roll," purporting to be a "muster and descriptive roll of a detachment of United States recruits mustered into service Jan. 17, 1865, forwarded by Lieutenant John Hamilton, for the 82d Regiment of United States Colored Infantry, stationed at Barrancas, Florida, pursuant to orders from the war department, dated," etc. Under the head of "Remarks" on this roll, was the following entry: "Credited 4th district, Penobscot county, 3d ward Bangor city, Me. Discharged from 2d Maine Cavalry, by special order No. 424, extr., 41, from the war department, dated Nov. 30, 1864, to enlist in the 82d United States Colored Infantry, with the view of being appointed hospital steward of the latter regiment." The muster roll was duly certified and signed by the mustering officer at New Orleans, Louisiana.

It appeared from testimony in behalf of the plaintiff, that his father, at his request, called upon the mayor of Bangor in February, 1865, informed him of the plaintiff's enlistment and assignment to the quota of Bangor, and requested the mayor to pay over the bounty on plaintiff's order, which the mayor declined to do until he should receive official notice of the enlistment and crediting of the plaintiff to the quota of the city; that the plaintiff reënlisted in consequence of the bounty promised by the defendant.

It appeared, on the part of the defendant, by documentary evidence from the adjutant-general's office, showing that the plaintiff was not credited on the defendant's quota.

The mayor testified, substantially, that he declined to draw order for plaintiff's bounty, because of want of evidence of enlistment and credit to defendant's quota; that he received from the offices of adjutant-general and provost-marshal, of Maine, official notice from day to day of the credits to defendant's quota; that no man could be credited on a quota without their order,—one of them having charge of one kind of enlistment, and the other of another.

Elijah Low, called by the defendant, testified, substantially, that

he was provost-marshal for the 4th district during the rebellion; that he received a letter from the plaintiff, but never felt authorized to credit a name to a town or sub-district until he received orders from the provost-marshal of the State, but had nothing to do with the adjatant-general of the State ; that witness had no authority to put plaintiff's name upon the quota of Bangor, according to the usages of the office, having had no evidence other than that contained in his letter.  On cross-examination, he testified that reënlisted men, who had served out their time, could enlist on whatever quota they pleased ; that witness had no authority to place a man on a quota or change one ; that the enlisted man might indicate where he would like to go, witness would return him to provost-marshal general of Maine ; that when the latter approved it he would notify witness, and the credit would be given accordingly.

The presiding judge directed a verdict, *pro forma*, for the plaintiff.  If the direction was not right, the verdict to be set aside and a nonsuit entered.

*Plaisted & Clark*, for the plaintiff, cited *Hart* v. *Holden*, 55 Maine, 575; *Johnson* v. *Newton*, 40 Verm. 9 ; *Gale* v. *Jamaica*, 39 Verm. 615; *Hill* v. *Eden*, 41 Verm. 202 ; *Steinway* v. *Eden*, 41 Verm. 187.

*A. L. Simpson*, city solicitor, and *J. A. Peters*, for the defendant.

DICKERSON, J.  The resolve of the city council of Bangor, under which the plaintiff claims bounty, provided for the payment of bounty to each man who had volunteered, or should volunteer, or to each enrolled man who had procured or should procure a substitute on the city's quota, under the call of the president, of Dec. 19, 1864.  The declared purpose of that resolve was " to fill the city's quota under that call."  No man could be available for this purpose until he had been duly accepted, and credited upon that quota.  This was a condition precedent to a valid claim for bounty.

The burden is upon the plaintiff to show that he was thus accepted and credited.  He was discharged from the 2d Maine Cavalry, serving in the department of the Gulf, reënlisted, and was mus-

tered into the military service of the United States Jan. 17, 1865, as appears by the muster and descriptive roll of the detachment to which he belonged.

Under the head of "Remarks" upon that roll was the following memorandum in writing, "credited 4th district, Penobscot county, 3d ward Bangor city, Me." This memorandum, made by the mustering-in officer more than two thousand miles distant from Bangor, did not, *ipso facto*, put the plaintiff upon Bangor's quota. It was not competent for that officer to fix the plaintiff upon that quota. Nor could the plaintiff place himself there without the approval of the proper authority. This memorandum was evidence of the plaintiff's election to go upon the quota of Bangor, nothing more. In order to make this election effectual, it must have been officially approved by the proper officer. No such official sanction was ever given. The quota of Bangor was filled without the plaintiff, and he cannot be upon a quota thus filled.

The construction of the resolve contended for by the counsel for the plaintiff would place men upon the quota of Bangor who had never been accepted as such by the proper authority, and render the city liable to pay an indefinite number of bounties under a vote to pay a limited number. Nor, under such construction, would the city authorities know when its quota was full. The plaintiff was never accepted upon the quota of Bangor, designated in the resolve in question, and is not entitled to the bounty claimed.

The plaintiff never having been upon the defendant's quota, could not have given the mayor "satisfactory evidence" that he was so credited. It, therefore, becomes unnecessary to consider the question of notice to the mayor.

The cases cited by the counsel for the plaintiff are so widely variant in their facts, from the case at bar, that they furnish no rule for construing the resolve under consideration.

*Verdict set aside.*

*Plaintiff nonsuit.*

APPLETON, C. J.; CUTTING, WALTON, DANFORTH, and TAPLEY, JJ., concurred.